## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BLANCA CASTILLO DE MARTINEZ,
*et al.*, individually and on behalf of all
others similarly situated,

         *Plaintiffs*,

    v.

TIER-ONE PROPERTY SERVICES, LLC,
*et al.*,

         *Defendants*.

Civil Action No. 23-2339 (LLA)

## MEMORANDUM OPINION AND ORDER

After many months of litigation and mediation, the parties in this putative class action suit have reached a potential settlement. Under the terms of the agreement, Defendants will pay $250,000 to resolve the pending wage-and-hour claims brought by a putative class of eighty-seven of its current and former employees. Both parties now jointly move to provisionally certify the putative class and preliminarily approve the Settlement Agreement. ECF No. 27. For the reasons explained below, the court grants the motion.

## I.     FACTUAL BACKGROUND

The court recounts the facts as alleged in the complaint. ECF No. 1. Blanca Castillo De Martinez, Vilma Somoza De Cienfuegos, Richard Cienfuegos, and Armida Garcia, and all proposed class members (collectively, "Plaintiffs"), are current and former employees of Tier-One Property Services, LLC ("Tier-One"), a "facility services provider of commercial janitorial, building maintenance[,] and specialty property services with the capacity of serving customers throughout the United States." ECF No. 1 ¶¶ 18, 44-47. James Harold Hatchett III is Tier-One's President

and CEO, and Claudia Eguez-Buchanan is its Vice President of Operations.  *Id.* ¶¶ 25, 30.  Both play key roles in determining how Tier-One compensates its employees.  *Id.* ¶¶ 27, 32.

Tier-One, Mr. Hatchett, and Ms. EguezBuchanan- (collectively, "Defendants") contract with federal and local agencies in the District of Columbia to provide general cleaning and maintenance services for government buildings.  *Id.* ¶ 49.  As relevant here, Defendants entered at least two contracts relating to the upkeep of the Federal Reserve Buildings (the "Cleaning Contract" and the "Maintenance Contract"), plus an unknown number of additional contracts related to other government buildings ("Unknown Contracts").  *Id.* ¶¶ 50-52.  These contracts are subject to federal and local wage laws, including the Service Contract Act ("SCA"), 40 U.S.C. § 6701 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the D.C. Minimum Wage Act ("DCMWA"), D.C. Code § 32-1001, *et seq.*, and the D.C. Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301, *et seq.*  ECF No. 1 ¶¶ 49-52.

Plaintiffs' claims can be divided into two buckets.  First, Plaintiffs allege that Defendants promised to pay the employees who performed work for governmental entities—the members of the putative class—as "public workers," which entitled them to certain wages and fringe benefits (or, as relevant here, cash payments in lieu of fringe benefits) under the SCA.  *Id.* ¶ 55-57; *see* 41 U.S.C. § 6703.  Despite knowing that the putative class members were entitled to certain wages and cash payments in lieu of benefits under the SCA, Defendants paid them below the required amounts, which violated the DCWPCL.  ECF No. 1 ¶¶ 61-64.  Second, Plaintiffs allege that Defendants failed to include these "in lieu" payments when calculating the putative class members' rate for overtime payments, which violated the FLSA, the DCMWA, and the DCWPCL.  *Id.* ¶¶ 67-76.

## II.    PROCEDURAL HISTORY

In August 2023, Plaintiffs filed a collective and class action complaint against Tier-One, Mr. Hatchett, and Ms. Eguez-Buchanan, alleging violations under the FLSA, the DCMWA, and the DCWPCL.  ECF No. 1.  After Defendants filed an answer in October 2023, ECF No. 7, the parties moved to toll all deadlines while they negotiated a potential settlement, ECF No. 18.  The court granted the motion in December 2023.  ECF No. 20.  Shortly thereafter, this case was reassigned to the undersigned.  *See* Docket, *Castillo De Martinez v. Tier-One Prop. Servs., LLC*, No. 23-CV-2339 (D.D.C. Dec. 15, 2023).

The parties continued to negotiate and exchange informal discovery into 2024.  *See* ECF Nos. 21 to 25.  Plaintiffs ultimately identified eighty-seven employees that were allegedly underpaid a cumulative $43,874.22 in regular and overtime wages.  ECF No. 27-1, at 3-4.  In July 2024, the parties filed this joint motion to certify a class and for preliminary approval of their Settlement Agreement.  ECF No. 27.  While the motion was pending, the parties moved for a telephone conference to discuss the motion, ECF No. 28, which the court denied, Dec. 9, 2025 Minute Order.

## III.    PROPOSED SETTLEMENT AGREEMENT

### A.    Class Definition

The parties' proposed Settlement Agreement defines the relevant class as:

> [A]ll Tier-One employees performing "Public Work" in the District of Columbia who performed more than forty hours of work in a workweek and/or were paid below the rate promised and owed pursuant to District of Columbia law during the "Class Period."

ECF No. 27-2 ¶ 8; *see* ECF No. 27-1, at 9-10.  Under the agreement, "Public Work" is defined as "service work performed for the benefit of governmental entities pursuant to a contract that requires the employer to promise to and be obligated to pay its service employees a certain amount

pursuant to the Service Contract Act," ECF No. 27-2 ¶ 7, and the "Class Period" is the "period between January 1, 2021, and March 3, 2024," *id.* ¶ 4.

### B.   Settlement Fund and Allocation

Defendants agree to pay up to $250,000 as the Gross Settlement Fund. ECF No. 27-2 ¶ 29. Of that total, the named Plaintiffs will be paid a "Service Award" of $20,000 total, or $5,000 each, *id.* ¶ 31(b), and Plaintiffs' counsel will be paid a "Fee Award" of $137,000, *id.* ¶ 31(a). The remaining Net Settlement Fund of $93,000 will be paid out to the rest of the class. *Id.* ¶ 30; ECF No. 27-3, at 4.

| Gross Settlement Fund | | $250,000.00 |
|---|---|---|
| Service Award (paid to named Plaintiffs) | (8.0%) | $20,000.00 |
| Fee Award (paid to counsel) | (54.8%) | $137,000.00 |
| Net Settlement Fund (paid to remaining class members) | (37.2%) | $93,000.00 |

*Service Award.* The proposed Service Award is based on the named Plaintiffs' contributions of time, energy, and documentation, as well as their assumption of risk in prosecuting the action against their former employer. ECF No. 27-1. at 12-13.

*Fees Award.* While attorneys' fees are normally calculated using a cost matrix based on an attorney's law school graduation year, known as the "*Laffey* Matrix," *see Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015), Plaintiffs' counsel has requested a Fee Award below the *Laffey* Matrix rate. ECF No. 27-1, at 14-15. Plaintiffs' counsel represents that the quoted figure is several thousand dollars less than their entitlement under the *Laffey* Matrix. *Id.* at 15. The request is based on work already completed and does not include any work that may be required to finalize and implement the agreement. *Id.* at 14-15.

*Net Settlement Fund*.  Each class member's individual payment will be calculated on a case-by-case basis, depending on the wages owed.  ECF No 27-2 ¶ 30(b).  Based on available information and employment records, Plaintiffs calculated that all eighty-seven class members (including the named Plaintiffs) would have been owed $43,874.22 if they were to prevail.  ECF No. 27-1, at 10.  Therefore, each non-named Plaintiff will receive roughly 2.1 times their potential unpaid wages.  ECF No. 27-2 ¶ 30(c).

The individual payments were calculated through two primary steps.  First, to ascertain the shortfall in regular wages, Plaintiffs' counsel determined the amounts that would have been paid if Defendants had complied with the SCA.  *Id.* ¶ 30(b).  The difference between that value and the actual rates paid to each member produced each member's damages.  *Id.*  Second, through arms-length investigation and negotiation, the parties determined the amount of overtime hours worked by each class member.  *Id.*  Plaintiffs' counsel then included the members' hourly benefit rate into the "regular rate" used to calculate overtime pay.  *Id.*  The difference between the actual overtime compensation and the overtime compensation owed (with the benefit rates factored in) produced each member's damages.  *Id.*

### C.    Settlement Claims Administrator

Plaintiffs' counsel will retain ILYM Group, Inc. as the Settlement Administrator.  *Id.* ¶ 28.  It will be responsible for, among other things, disseminating the notice form to all class members, informing the parties of material communications by class members, managing any requests for exclusion from class members, distributing settlement checks, attempting to contact any unresponsive class members, and providing a final report on class participation.  *Id.*

### D.    Reversion of Uncashed Settlement Checks

Within ten days of receiving each class member's settlement share, the Settlement Administrator will deliver two checks totaling the amount of that share to the class member. *Id.* ¶ 49. If a member does not cash his or her checks within sixty days of the mailed check's post-date, the Settlement Administrator shall attempt to contact the member by telephone, text, and mail. *Id.* ¶ 50. The Settlement Administrator shall also conduct a skip trace to ensure that the member's contact information is accurate. *Id.* If it is determined that the member's checks were not delivered, Defendants shall coordinate with the Settlement Administrator to deliver new checks and will cover the costs of doing so. *Id.* If, despite these efforts, any class members do not cash their checks within 120 days after the post-date of the original mailed checks, Defendants will void those checks. *Id.* ¶ 51. If, after an additional 120 days, the checks are still not cashed, the class member will be deemed to have waived his or her right to the settlement share, and the funds will revert back to Defendants. *Id.*

### E.    Release

All Plaintiffs who do not request to be excluded from the settlement within sixty days will agree to release Defendants from all known or unknown claims "relating in any way to the failure to properly compute wages during the Class Period" or that "reasonably arise out of the acts alleged in the Lawsuit." *Id.* ¶ 32.

## IV.    LEGAL STANDARDS

A district court's review of a proposed class action settlement agreement proceeds in three primary steps. *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 189 (D.D.C. 2017). "First, the parties present a proposed settlement agreement to the court for so-called 'preliminary approval.'" *Id.* at 190 (quoting William B. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2014)).

"Second, if the court does preliminarily approve the settlement (and conditionally certify the class), notice is sent to the class describing the terms of the proposed settlement and explaining class members' options with respect to the settlement agreement, including the right to object to the proposed settlement." *Id.* (internal quotation marks omitted) (quoting Rubenstein, *Newberg on Class Actions* § 13:10). Third, the court holds a hearing and may give final approval to the agreement only upon a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see Ross*, 267 F. Supp. 3d at 190. The court may also certify the class during this last stage, if it has yet to do so. *See Ross*, 267 F. Supp. 3d at 190.

Whether to preliminarily approve a class action settlement agreement is within the district court's sound discretion. *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 106 (D.D.C. 2013). The court must ensure that the "settlement is fair, adequate, and reasonable," and that it "is not the product of collusion between the parties." *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Where, like here, parties seek class certification and settlement approval simultaneously, the court must exercise "closer judicial scrutiny" than for settlements reached *after* class certification. *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 23 (D.D.C. 2011) (quoting *Manual for Complex Litigation*, § 21.612 (4th ed. 2004)); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."). Generally speaking, courts will "grant preliminary approval of a class action settlement if it appears to fall 'within the range of possible approval' and 'does not disclose grounds to doubt its fairness or other obvious deficiencies.'" *Richardson*, 951 F. Supp. 2d at 106 (quoting *Trombley*, 759 F. Supp. 2d at 23).

7

## V.    DISCUSSION

### A.    Provisional Class Certification

To be certified as a class, Plaintiffs must meet the requirements of Rule 23(a) and fall into one of the Rule 23(b) categories. *Amchem Prods.*, 521 U.S. at 614. Here, Plaintiffs seek the provisional certification of the following class:

> [A]ll Tier-One employees performing "Public Work" in the District of Columbia who performed more than forty hours of work in a workweek and/or were paid below the rate promised and owed pursuant to District of Columbia law during the "Class Period."

ECF No. 27-2 ¶ 8; *see* ECF No. 27-1, at 9-10. Defendants do not contest class certification, but the court must still ensure, "after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

#### 1.    Rule 23(a) requirements

Rule 23(a) requires a showing that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the [named plaintiffs] are typical of [those] of the class; and (4) the [named plaintiffs] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are referred to as numerosity, commonality, typicality, and adequacy. *Amchem Prods.*, 521 U.S. at 613.

##### a.    Numerosity

There are no "absolute limitations" on the numerosity requirement. *Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 759 (D.C. Cir. 2023) (quoting *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980)). The core inquiry focuses on the impracticability of joinder, but sheer numbers often serve as a proxy for that inquiry. *See Hinton v. District of*

*Columbia*, 567 F. Supp. 3d 30, 52 (D.D.C. 2021).  This court has presumed sufficient numerosity "when a proposed class has at least forty members."[1]  *See., e.g.*, *Bunn ex rel. Coleman v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015) (quoting *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 196 (D.D.C. 2013)).  Plaintiffs "must provide some evidentiary basis beyond a bare allegation of the existence of numerous class members," but the court may "draw reasonable inferences from the facts presented to find the requisite numerosity."  *Id.* (quoting *McCuin v. Sec'y of Health & Hum. Servs.*, 817 F.2d 161, 167 (1st Cir. 1987)).

In this case, the four named Plaintiffs seek to represent eighty-three putative class members, for a total of eighty-seven individuals.  ECF No. 27-1, at 17; *see* ECF No. 27-3.  In support, Plaintiffs provide a detailed chart of all employees who were allegedly underpaid pursuant to the relevant contracts.  *See* ECF No. 27-3.  The proposed class therefore satisfies the numerosity requirement.

      b.    Commonality

In the simplest terms, commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Wal-Mart Stores*, 564 U.S. at 349-50 (internal quotation marks omitted) (quoting *Falcon*, 457 U.S. at 157).  While the existence of "a uniform policy or practice" affecting all class members is generally sufficient to meet commonality, *Thorpe v. District of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014) (quoting *D.L. v. District of Columbia*, 302 F.R.D. 1, 12 (D.D.C. 2013)), it is not necessary, *Harris*, 77 F.4th at 759.  Rather, the putative class must rely on a "common contention of such a nature that it is capable of classwide resolution."  *Harris*, 77 F.4th at 759 (internal quotation marks omitted) (quoting *Wal-Mart Stores*, 564 U.S. at

---

[1] At the other end of the spectrum, "a class that encompasses fewer than [twenty] members will likely not be certified absent other indications of impracticability of joinder."  *Bunn ex rel. Coleman*, 306 F.R.D. at 76 (quoting Rubenstein, *Newberg on Class Actions* § 3:11).

350). Put differently, what matters is not necessarily "the raising of common 'questions,'" but rather "the capacity of a class-wide proceeding to generate common *answers*" that will help resolve the litigation. *Wal-Mart Stores*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-32 (2009)).

In this case, all eighty-seven class members were Tier-One employees "subject to the same compensation requirements" arising out of the same contracts. ECF No. 27-1, at 17. The core legal question is whether Defendants improperly calculated the pay rates for regular and overtime compensation for its janitorial and maintenance employees performing public work under the SCA. Accordingly, the putative class members' injuries share a common thread that satisfies commonality.

### c.    Typicality

While related to commonality, typicality asks whether the *named plaintiff's* claims are sufficiently related to the those of the entire class. *See Gen. Tel. Co. of the Nw.*, 446 U.S. at 330. This requirement is satisfied "if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (per curiam) (quoting 7A Charles Alan Wright, et al., *Federal Practice & Procedure* § 1764 (4th ed. 2019)). Both methods establish typicality here, as all Plaintiffs allegedly suffered compensation injuries in the same way: through Defendant's failure to pay proper wages and accurately calculate what was owed under the relevant employment contracts.

### d.    Adequacy

Finally, whether the named plaintiffs will adequately represent the interests of the class depends on two criteria: (1) "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class"; and (2) "the representative must appear able to

vigorously prosecute the interests of the class through qualified counsel." *Nat'l Ass'n of Reg'l Med. Programs, Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976).  Rule 23(g)(1)(A) requires the court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

Here, the named Plaintiffs share the same interests and goals as the putative class: they all want to recover unpaid wages pursuant to the public work contracts.  Furthermore, they have retained Michael K. Amster, Esq. and Thomas J. Eiler, Esq. of the law firm of Zipin, Amster & Greenberg, LLC—a firm with extensive experience litigating wage-and-hour legal claims.  *See* ECF No. 27-1, at 20.  Both the named Plaintiffs and their attorneys have spent considerable time investigating and developing the claims in this lawsuit.  *Id.*  The court is confident that they have, and will continue to, adequately represent the interests of the class as a whole.

### 2.    *Rule 23(b) category*

In addition to meeting the four Rule 23(a) requirements, class action plaintiffs must also demonstrate that they fall into one of the three Rule 23(b) categories.  Fed. R. Civ. P. 23(b).  Here, Plaintiffs seek certification under Rule 23(b)(3), usually referred to as the "predominance and superiority" category, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

a.    Predominance

The predominance inquiry asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.  The court must ensure that "common, aggregation-enabling[] issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting Rubenstein, *Newberg on Class Actions* § 4:49).  Individual questions require evidence that varies from member to member, whereas common questions may be answered by "generalized evidence [that] proves or disproves an element on a simultaneous, class-wide basis." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002) (quoting *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)).

In this case, the central question of whether Defendants failed to properly calculate and compensate Plaintiffs' wages—both regular and overtime—in violation of the DCMWA, the DCWPCL, and the FLSA will likely be provable through common evidence.  While the amounts of compensation owed may vary from member to member, that does not defeat predominance.  The individual amounts take a back seat to the main issue: whether Defendants violated wage laws as applied to these Plaintiffs.  Indeed, numerous judges of this court have found predominance to be satisfied in similar claims.  *See, e.g.*, *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 162 (D.D.C. 2014) (finding predominance in FLSA and DCMWA claim where the plaintiffs alleged that the defendant had a "generalized practice of failing to pay its employees the overtime to which they were entitled"); *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 485-86 (D.D.C. 2019) (similar).

b.    Superiority

Superiority focuses on whether "class adjudication makes the litigation more manageable and promotes the prompt and efficient resolution of the case." *Harris*, 77 F.4th at 763.  Ideally, a class action will "achieve economies of time, effort, and expense" while "promot[ing] . . . uniformity of decision as to persons similarly situated." *Stephens*, 329 F.R.D. at 486 (quoting *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 117 (D.D.C. 2007)).  Factors the court may consider in this assessment are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum."  Fed. R. Civ. P. 23(b)(3); *Amchem Prods.*, 521 U.S. at 620 (explaining that, while Rule 23(b)(3) features a fourth factor, courts need not consider subsection (D) when "[c]onfronted with a request for settlement-only class certification").

If each of the putative class members were to bring their own lawsuits in this case, it would significantly tax the court's resources with little to no marginal benefit.  As discussed above, the legal and factual questions here are common to all members.  Furthermore, the relatively small financial injuries sustained by each putative member (when compared to the total damages sustained by the class) would likely make individual lawsuits cost-prohibitive for Plaintiffs.  Additionally, the named Plaintiffs are unaware of any already existing lawsuits by putative class members.  ECF No. 27-1, at 23.  Finally, concentrating the litigation in this district is preferable given that Plaintiffs' alleged injuries arise from work they performed in the District of Columbia under District of Columbia law.

*      *      *

For these reasons, the court concludes that Plaintiffs meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). Plaintiffs also satisfy the predominance and superiority conditions in Rule 23(b)(3). The court thus provisionally certifies the putative class.

## B.    Preliminary Settlement Approval

"[T]here is a long-standing judicial attitude favoring class action settlements." *Cohen*, 522 F. Supp. 2d at 114. Approval of a proposed class-action settlement is governed by Rule 23(e), which requires a finding that the agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The "D.C. Circuit has not announced a specific test" for preliminary approval, but courts in this jurisdiction usually consider five factors: "(1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strengths of [the] plaintiffs' case; (3) the status of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel." *Stephens*, 329 F.R.D. at 486 (alteration in original) (quoting *Alvarez*, 303 F.R.D. at 163).

### 1.    Arm's length negotiations

There is a "presumption of fairness, adequacy, and reasonableness" for class-action settlements reached through "arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Vitamins*, 305 F. Supp. 2d at 104 (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)).

Plaintiffs represent that class counsel engaged in roughly five months of informal discovery, exchanged frequent communications, and retained a mediator to facilitate settlement talks. ECF No. 27-1, at 24; ECF No. 27-4 ¶¶ 18-22. Both parties agree that the agreement was the result of arm's length negotiations. ECF No. 27-1, at 25. And class counsel submitted a declaration under penalty of perjury attesting to the same. ECF No. 27-4 ¶¶ 19, 36.

2.    *Terms of the settlement in relation to the strength of Plaintiffs' case*

While the named Plaintiffs are confident about the legal and factual bases of their claims, they recognize that all litigation poses risks. ECF No. 27-1, at 25. Proceeding to a full trial could also result in an appeal, further increasing costs and delaying a potential resolution. *See Cohen*, 522 F. Supp. 2d at 118 ("Even if Plaintiffs had prevailed over these obstacles at trial, it is likely that any verdict would have been followed by an appeal, which might have further delayed the final resolution of this case."). By reaching a settlement agreement, the parties can largely eliminate litigation risk and efficiently resolve their *bona fide* disputes, *see* ECF No. 27-1, at 25-26 (explaining that the parties would be forced to litigate genuine disagreements about the application of federal regulations and various factual defenses), without expending more time, energy, or resources.

a.    Net Settlement Fund

Plaintiffs calculated the class's potential lost wages to be $43,874.22. ECF No. 27-1, at 10. Pursuant to the agreement's terms, the class will receive a total payout of $93,000, excluding service awards and attorney's fees. ECF No. 27-2 ¶ 31; *see* ECF No. 27-3. That is more than double the potential damages owed. And each member will receive approximately 212% of their potential unpaid wages. *See* ECF No. 27-3.

b.    Service Awards

Each of the four named Plaintiffs will receive a $5,000 service payment for their role in the litigation, or about 8% of the Gross Settlement Fund. ECF No. 27-2 ¶ 31(b). Such awards are common in class-action lawsuits to compensate named plaintiffs for coming forward with their claims and subjecting themselves to various financial and reputational risks. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002). Courts consider various factors

15

when assessing the reasonableness of a service award, including the plaintiff's efforts to protect the interests of the class, the degree to which the class benefitted from those efforts, and the time and energy the plaintiff expended in doing so. *See Little v. Wash. Metro. Area Transit Auth.*, 313 F. Supp. 3d 27, 39 (D.D.C. 2018).

Plaintiffs cite several cases where the court approved a $5,000 or more service award for each named plaintiff. *See* ECF No. 27-1, at 12-13. Most of those cases involved total settlement amounts far greater than the one in this case. *See Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179 (D.D.C. 2011) (holding as reasonable a $15,000 service award out of a total settlement amount of $12 million, or roughly 0.125%, in an Electronic Funds Transfer Act case); *Little*, 313 F. Supp. 3d at 39 (holding as reasonable a $75,000 service award out of a total settlement amount of $6.5 million, or roughly 1.2%, in a Title VII case); *see also Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 8-9 (D.D.C. 2008) (holding as reasonable a $20,000 service award out of a total settlement amount of $1.54 million, or roughly 1.3%, in an insurance case); *Meyer v. Panera Bread Co.*, No. 2019 WL 11271381, at *11 (D.D.C. Mar. 6, 2019) (holding as reasonable a $45,000 service award out of a total settlement amount of $1.99 million, or roughly 2.3%, in an FLSA and DCMWA case).[2] But that does not automatically make Plaintiffs' request unreasonable. Indeed, other cases support Plaintiffs' request. *See Kinard v. E. Capitol Family Rental, L.P.*, 331 F.R.D.

---

[2] Cases outside of this jurisdiction reflect a similar trend. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (holding as reasonable a $7,500 service award out of a total settlement amount of $2.5 million, or roughly 0.3%, in an FLSA case); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013) (holding as reasonable a $80,000 service award out of a total settlement amount of $4.85 million, or roughly 1.7%, in an FLSA case); *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) (holding as reasonable a $5,000 service award out of a total settlement amount of $135,750, or roughly 3.7%, in an FLSA case); *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (holding as reasonable a $7,500 service award out of a total settlement amount of $178,928.84, or roughly 4.2%, in an FLSA case).

206, 217 (D.D.C. 2019) (holding as reasonable a $20,000 service award out of a total settlement amount of $100,000, or 20%, in a Housing Act case).

The proportional size of the service award is not one of the routine factors used to assess its reasonableness. The purpose of the service award is to compensate the named plaintiffs "for the services they provided and the risks they incurred during the course of the class action litigation." *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011). The amount of time and energy they spend is not necessarily commensurate with the size of the class or the gross settlement fund. Whether the total payout is ten, twenty, or a hundred times the service award may not change the aggregate effort invested by the lead plaintiffs. The four named Plaintiffs in this action "committed hours of time reviewing their own retained documents, being interviewed by counsel, attending in-person mediation, and taking time off work" to help resolve the case. ECF No. 27-1, at 12. While there is no direct evidence that these named Plaintiffs faced retribution or reputational harms here, the court recognizes that leading a class-action suit always poses "unique risks." *Nat'l Veterans Legal Servs. Program v. United States*, 724 F. Supp. 3d 1, 23 (D.D.C. 2024) (quoting *Mercier v. United States*, 156 Fed. Cl. 580, 589 (Fed. Cl. 2021)), *appeal docketed*, No. 24-1757 (D.C. Cir. 2024). The court thus preliminarily approves the service awards in the Settlement Agreement.

c.    Fee Award

Class counsel seeks $137,000 as its fee award. ECF No. 27-2 ¶ 31. Attorneys' fee awards "must be reasonable in light of the results obtained." *In re LivingSocial Mktg. & Sales Prac. Litig.*, 298 F.R.D. 1, 15 (D.D.C. 2013) (quoting *In re Dep't of Veterans Affs. Data Theft Litig.*, 653 F. Supp. 2d 58, 60 (D.D.C. 2009)). While the D.C. Circuit instructs courts to use a percentage-of-the-fund method to calculate attorneys' fee awards in most common fund cases, *Swedish Hosp. v.*

*Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993), the procedure differs in FLSA, DCMWA, and DCWPCL cases, *see Driscoll v. George Wash. Univ.*, 55 F. Supp. 3d 106, 113 (D.D.C. 2014).[3] These three statutes "all require that a prevailing plaintiff receive an attorneys' fee award." *Herrera v. Mitch O'Hara LLC*, 257 F. Supp. 3d 37, 46 (D.D.C. 2017). The court assesses the award's reasonableness by multiplying the number of hours expended by an hourly rate. *Id.* As mentioned above, District of Columbia law computes the hourly rate pursuant to the *Laffey* Matrix, updated for the current market. D.C. Code § 32-1308(b)(1). The inflation-adjusted version is commonly referred to as the LSI *Laffey* Matrix. *See Eley v. District of Columbia*, 793 F.3d 97, 101-02 (D.C. Cir. 2015).

Because matrices are inherently limited, fee applicants must ordinarily "produce satisfactory evidence—*in addition to* the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 100. (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Here, however, the parties do not dispute the applicability of the LSI *Laffey* Matrix and agree that it accurately represents the standard compensation for wage-and-hour litigation. ECF No. 27-1, at 14-15. There is also no evidence suggesting that the matrix is inaccurate as applied to wage-and-hour litigation. Plaintiffs state that class counsel has spent more than 265 hours working on this case, "investigati[ng], research[ing], drafting pleadings, [engaging in] five (5) months of settlement discussions and correspondence, [participating in] formal in-person

---

[3] The D.C. Circuit "has not specifically addressed the application of the percent-of-fund method to [the] calculation of fee awards in FLSA cases." *Driscoll*, 55 F. Supp. 3d at 113 (alteration in original) (internal quotation marks and quoted source omitted). But using the percentage-of-the-fund method in such a case "would undercut the very purpose of the mandatory fee-shifting statute" because a fee-shifting statute guarantees attorneys' fees irrespective of the plaintiff's recovery. *Id.* (citing *Swedish Hosp. Corp.*, 1 F.3d at 1268).

mediation, and drafting settlement documentation." ECF No. 27-4 ¶¶ 25. Pursuant to the LSI *Laffey* Matrix, class counsel would be able to charge more than $155,000 in fees for this work before accounting for costs and compensation paid to the Settlement Administrator. ECF No. 27-1, at 14-15. That amount also does not account for additional work that will be needed to finalize the Settlement Agreement. *Id.* at 15. At this preliminary stage, the court concludes that the proposed fee award—which discounts class counsel's conservative estimate by $18,000—is reasonable.

### 3.    *Litigation status at the time of settlement*

Under this factor, courts ask "whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery." *Kinard*, 331 F.R.D. at 216 (quoting *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 565 F. Supp. 2d 49, 57 (D.D.C. 2008)). Both parties agree that they had the requisite evidence and documentation to conclude that a settlement was in their best interests. ECF No. 27-1, at 27.

### 4.    *Reaction of the class*

Because notice has not yet been sent to the class, the court will evaluate its reaction later in the proceedings, but before final approval. The named Plaintiffs are satisfied and support the Settlement Agreement. ECF No. 27-1, at 27.

### 5.    *Opinions of experienced counsel*

The "opinion of experienced counsel 'should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement.'" *Stephens*, 329 F.R.D. at 488-89 (quoting *Cohen*, 522 F. Supp. 2d at 121). Class counsel, who have extensive experience litigating wage-and-hour lawsuits, ECF No. 27-1, at 20, concluded that the Settlement Agreement "is fair, reasonable, and adequate" after carefully "analyz[ing] Defendants['] potential liability and the

exposure caused by the alleged wage violations."  ECF No. 27-4 ¶¶ 22, 24.  In sum, they believe that adopting the proposed agreement "is in the best interests of the class."  *Id.* ¶ 24.

\*       \*       \*

For these reasons, the court preliminarily approves the Settlement Agreement.

### C.    Notice and Further Proceedings

Under Rule 23(e)(1)(B), the court "must direct notice . . . to all class members who would be bound by the proposal" in a way that is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Stephens*, 329 F.R.D. at 490 (second alteration in original) (first quoting Fed. R. Civ. P. 23(e)(1)(B), then quoting *Brown v. Wells Fargo Bank, N.A.*, 869 F. Supp. 2d 51, 64 (D.D.C. 2012)).

The proposed Notice combines the required information under Rule 23(e) with the notice requirements of Rule 23(c).[4]  It provides the class members with all the relevant information related to this proceeding.  It explains the background and context of the lawsuit, ECF No. 27-5, at 1, the members' rights, *id.* at 2, the total amount of the settlement, *id.*, the fund distribution process, *id.*, the scope of the release of liability, *id.* at 3, the steps necessary to object or opt out of the class, *id.* at 3-4, and the time of the final fairness hearing to approve the Settlement Agreement, *id.* at 4.  The court finds that the proposed Notice, ECF No. 27-5, satisfies Rule 23(c) and (e).

### VI.    CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that the parties' Joint Motion to Certify Class and for Preliminary Approval of Settlement, ECF No. 27, is **GRANTED**;

---

[4] Rule 23(c) concerns notice procedures for certified classes apart from those for settlement agreements.  Fed. R. Civ. P. 23(c)(2).

**ORDERED** that the class defined in paragraph 8 of the Settlement Agreement, ECF No. 27-2, is provisionally certified for settlement purposes;

**ORDERED** that the terms of the Settlement Agreement, including all of its provisions, definitions, and procedures, are hereby preliminarily approved, subject to further consideration at the final fairness hearing;

**ORDERED** that the named Plaintiffs, Blanca Castillo De Martinez, Vilma Somoza De Cienfuegos, Richard Cienfuegos, and Armida Garcia, are approved as the class representatives for the settlement class;

**ORDERED** that Michael K. Amster, Esq. and Thomas J. Eiler, Esq. of the law firm Zipin, Amster & Greenberg, LLC are approved as class counsel;

**ORDERED** that ILYM Group, Inc. is approved as the Settlement Administrator;

**ORDERED** that the proposed Notice, ECF No. 27-5, attached as Exhibit A below, and the proposed manner of disseminating said Notice, are approved. Once the Notice has been disseminated to class members, such distribution shall constitute sufficient notice of the proposed Settlement Agreement and fairness hearing under Federal Rule of Civil Procedure 23;

**ORDERED** that, within fifteen days of the entry of this Memorandum Opinion and Order, the Settlement Administrator shall prepare final versions of the Notice and disseminate them to the class;

**ORDERED** that any class member wishing to be excluded from the settlement class shall mail a written request for exclusion to the Settlement Administrator that must be postmarked by sixty days after the Notice form's postmark date;

**ORDERED** that all class members who do not submit a timely request for exclusion shall be bound by all determinations, orders, and judgments in this action;

ORDERED that any class member that wishes to object to the Settlement Agreement may file their written objection with this court on or before sixty days after the Notice form's postmark date;

ORDERED that the parties shall meet and confer on mutually agreeable dates and times on or after May 19, 2025 for a final fairness hearing and communicate those times to the Courtroom Deputy Clerk, Ms. Margaret Pham (Margaret_Pham@dcd.uscourts.gov), by March 3, 2025.

ORDERED that this Memorandum Opinion and Order may be modified by the court upon motion by either party, for good cause.

SO ORDERED.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   February 14, 2025

# Exhibit A

Notice of Proposed Class Action Settlement

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BLANCA CASTILLO DE MARTINEZ, *et al.*  )
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　　　　　)　Case No.: 1:23-cv-2339-LLA
　　　　　　　　　　　　　　　　　　　　　)
TIER-ONE PROPERTY SERVICES, LLC, *et al.*  )
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)

### NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*THIS IS A COURT AUTHORIZED NOTICE. THIS IS NOT AN ATTORNEY SOLICITATION*

**<u>WHY AM I RECEIVING THIS NOTICE?</u>:** On **[DATE]**, the United States District Court for the District of Columbia entered an order certifying this suit as a class action, appointed Zipin, Amster and Greenberg, LLC as class counsel, and directed that this Notice Form be sent to affected employees. While the Court has authorized this Notice and its contents, the Court has taken no position and has not made any rulings on the merits of the claims.

This notice pertains to the class which has been certified as:

> <u>Any Tier-One Property Services, LLC employees performing work subject to a federal contract in the District of Columbia who performed more than forty hours of work in a workweek and/or were paid below the rate promised and owed pursuant to District of Columbia law during the period of January 1, 2021, through March 3, 2024.</u>

You are receiving this Notice because you are a person defined by the forgoing definition. **<u>You do not have to do anything further to become or remain a member of the class</u>**.

Former employees ("Named Plaintiffs") sued Tier-One Property Services, LLC, James Harold Hatchett III, and Claudia Eguez-Buchanan (collectively, "Defendants") to recover unpaid wages, including overtime wages, owed pursuant to District of Columbia and federal law. The Named Plaintiffs filed the lawsuit as a Rule 23 class action under the District of Columbia Minimum Wage Act and the District of Columbia Minimum Wage Payment Collection Law, and as a collective action under the Fair Labor Standards Act. Defendants deny these allegations and maintain that its employees were properly compensated at all times. Specifically, the Named Plaintiffs allege that Defendants improperly calculated overtime for their employees and failed to properly compensate their employees according to the terms of certain federal contracts for work performed in the District of Columbia.

**WHAT ARE MY RIGHTS AT THIS POINT?:** You can choose to:

I.    **EXCLUDE YOURSELF:** You may choose to receive no payment according to the terms of the Settlement Agreement and retain your right to sue Defendants on your own and at your own expense about the same claims that Named Plaintiffs allege in this class action. To do so, you must take steps now to get out of the class. To do so, you must contact the Settlement Administrator, ILYM Group, at XXX within the **SIXTY (60) DAYS** from the date this Notice was mailed. Any request for exclusion must be received by the Settlement Administrator on or before the sixtieth day from the date of mailing of this Notice Form.

II.   **OBJECT:** You may choose to write to the Court about why you believe the settlement is unfair or unreasonable. If you choose to object to the terms of the Settlement Agreement, you must do so within **SIXTY (60) DAYS** from the date this Notice was mailed. If the Court rejects your objection, you will still be bound by the terms of the settlement. If you object you may appear at the Fairness Hearing to speak to the Court about the fairness of the settlement.

III.  **DO NOTHING:** You may choose to do nothing and await the Final Approval of this Settlement Agreement. After the Final Approval of the Settlement Agreement, a check will be issued in your name to arrive at the address you received this Notice. You will have **ONE HUNDRED AND TWENTY (120) DAYS** to cash this check from the post-date of the mailing of the check.

**WHY IS THERE A SETTLEMENT?:** The Court did not issue a final judgement in favor of Named Plaintiffs or Defendants. To avoid the burden, expense, inconvenience, and uncertainty of continued litigation, the parties have concluded that it is in their best interests to resolve and settle the action by entering into a settlement agreement. Accordingly, Named Plaintiffs and Defendants have settled. Defendants have agreed to provide $250,000.00 to resolve the case. This amount will be allocated as follows: (1) $113,000.00 will be paid to Putative Class Members (*i.e.,* you); (2) $137,000.00 will be paid to Zipin, Amster & Greenberg, LLC (*i.e.,* your attorneys); and (3) $20,000.00 of the $113,000.00 will be allocated to the Named Plaintiffs as a Service Award of $5,000.00 each for filing this action and serving as class representative. Both sides believe they would have prevailed in the case, but there was no final decision ruling in favor of either party. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Named Plaintiffs and the attorneys think the settlement is best for all Putative Class Members.

**WHAT AM I ENTITLED TO?:** You are entitled to two (2) checks from Defendants in this matter. One check will be made out in the amount of $XXX subject to applicable W-2 tax withholdings. Another check will be made out in the amount of $XXX subject to IRS Form 1099 reporting.

**WHAT AM I GIVING UP TO RECEIVE PAYMENT?:** If the Court grants final approval of settlement, these claims will be dismissed with prejudice and Putative Class Members (*i.e.,* you) who do not opt out will fully release and discharge Defendants from January 1, 2021 through March 3, 2024 from all state and federal law wage and hour claims asserted, or which could have been asserted, in this action. This means that you cannot sue, continue to sue, or be party to any other lawsuit against Defendants regarding the Rule 23 class or federal claims brought in this case.

The Release in the Settlement Agreement provides that:

> Upon Final Approval by the Court of the Settlement, the Settlement Class Members who do not submit Requests for Exclusion within sixty (60) days of the post-date of the Notice Form shall fully discharge Releasees from any and all known or unknown claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, interests, and causes of action of whatever kind or nature relating in any way to the failure to properly compute wages during the Class Period or to the facts and claims that were alleged or that reasonably arise out of the acts alleged in the Lawsuit, which includes all claims for uncompensated time, minimum wages, overtime wages, or any other wages, including, but not limited to, claims arising under the FLSA, state and/or local statutes or ordinances governing minimum wages, overtime wages, and payment of wages, wage notices, state common law (breach of contract, unjust enrichment and other common law claims), and any other federal, state, or local law, rule, regulation, ordinance, or public policy. The release includes claims under the DCWMA, the DCWPCL, and the FLSA. The release encompasses any claims, damages, costs, fees, or expenses that are derivative of the claims being released.

**DO I HAVE A LAWYER IN THIS CASE?:** The Court has decided that the lawyers at the law firm of Zipin, Amster & Greenberg, LLC are qualified to represent you and all Putative Class Members. These lawyers are called "Class Counsel". If the settlement is approved, Class Counsel will be paid $137,000.00 from the Gross Settlement Fund to cover their hourly attorneys' fees and costs. You will not pay any amount from your recovery for these lawyers. You do not need to retain your own attorney to be able to participate as a Class Member. If you do not request to be excluded and want to be represented by your own lawyer, you may hire one at your own expense.

**HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?:** If you do not want a payment from the settlement, and you want to keep the right to sue or continue to sue Defendants, on your own about the legal issues in this case or which could have been brought in this case, then you must take steps to exclude yourself from this case. If you intend to exclude yourself, you must mail a written, signed statement to the Settlement Administrator, ILYM Group, Inc., at XXX within **SIXTY (60) DAYS** from the date this Notice was mailed.

**HOW DO I OBJECT?:** You can object by filing an objection with the United States District Court for the District of Columbia by and through your own attorney or by yourself within **SIXTY (60) DAYS** from the date this Notice was mailed. You may also provide the Settlement Administrator ILYM Group, at <mark>XXX</mark> with a copy of your written objection to be filed with the Court. If you intend to object to the terms of the settlement, you must remain in the class. In other words, you cannot request to be excluded from the class <u>and</u> object to the Settlement Agreement. You must state all the reasons for your objections in your correspondence.

**WHAT IS A FAIRNESS HEARING?:** The Court will hold a Fairness Hearing on <mark>XXX</mark> at the United States District Court for the District of Columbia, 333 Constitution Avenue, NW, Washington, DC 20001 in Courtroom <mark>XXX</mark>. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have been asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement, including the payment of fees and expenses to Class Counsel. We do not know how long these decisions will take. **ONE HUNDRED AND TWENTY (120) DAYS** from the date that the final approval of the settlement is made and the thirty (30) day period for appeals of the final approval has elapsed or any applicable appeal has been resolved, the checks described herein shall be mailed to you.

Your attendance at the Fairness Hearing is not required, but you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as the objection is timely filed, the Court will consider it. You may also pay your own attorney to attend, but it is not necessary.

If you file a timely objection, you may ask the Court for permission to speak at the Fairness Hearing. You must include the words "I intend to appear at the Fairness Hearing" in your written and filed objection. Your testimony at the Fairness Hearing will be limited to those reasons that are included in your written objection. You cannot speak at the hearing if you exclude yourself from the settlement.

**WHAT IF I HAVE OTHER QUESTIONS?:** This Notice is only a summary. If you have additional questions, please call Class Counsel:

Michael K. Amster, Esq.
Thomas Eiler, Esq.
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, MD 20910
(301) 587-9373

**PLEASE DO NOT CONTACT THE COURT REGARDING THE SETTLEMENT. THE COURT MUST REMAIN NEUTRAL IN THIS MATTER AND CANNOT OFFER YOU ADVICE.**